Arguments not to exceed 15 minutes per side. Mr. West for the appellant. Good morning. You may proceed. Good morning, your honor. May it please the court, I'd like three minutes for rebuttal. All right. In response to Mr. Tullock's motion to suppress, the government failed to meet its burden to put forth objective, concrete, and articulable evidence in order to demonstrate probable cause that a traffic violation had occurred. This court must review Trooper Stylo's testimony de novo to determine whether it meets the applicable standard. Trooper Stylo testified only to his subjective conclusion that if Mr. Tullock laid on the brakes, or if the vehicle in front laid on the brakes, Mr. Tullock would not be able to stop in time. Isn't credibility the kind of factual determination that we consider under a clearly erroneous standard? Credibility is not at issue in this case, your honor. The district court, I'm sorry, the magistrate concluded that the officer was credible, and I'm not contesting credibility at all in this case. What I'm contesting is the fact that that testimony of the officer taken as true establishes the probable cause. That it's sufficient. That's correct. And that testimony isn't sufficient. The officer did not recall the speed of the vehicles. He did not recall the following distance of the vehicles. He didn't recall if the vehicle in front was braking or slowing down. He didn't recall whether there were any curves in the road. This officer testified only to his subjective conclusion that Mr. Tullock would not be able to stop if the vehicle in front came to a dynamic stop. Sure, he testified to a generalized list of things that he would consider in making that determination. But this officer could not testify to any one of those enumerated factors that he actually did consider in this case. So that enumerated list, that generalized list, does not save this stop. In essence, the government is asking this court to credit the subjective conclusion of this officer made within the black box of his mind outside the view of this court and anyone else. There's no basis to review whether this officer made a reasonable conclusion or not. The jurisprudence requires that the officer be able to articulate the basis for his conclusion, and the officer could not do that. Each of the cases in my brief demonstrates this example or this principle. Each case indicates that the testifying officer could point out objective facts such as speed, following distance, and road conditions. And in this case, Trooper Stylo couldn't. Contrary to the government's assertion, we're not arguing for a bright line rule that in all cases speed and following distances are required. The cases cited in my brief most often include testimony of those facts, and that's not surprising because the Tennessee Driver Manual specifically talks about those two factors. And also the statute itself, the Tennessee statute, specifically says that the driving distance must be considered with due regard for speed, traffic, and conditions of the highway. Those are obviously relevant conditions. That's why they come up in the case law. Is it a matter that there was no countervailing evidence presented by the defendant at the suppression hearing? No, Your Honor, because it's the government's burden in order to establish probable cause to stop this vehicle. And so the government started at zero and had to work up from there and never crossed the threshold. Never reached the threshold, okay. The government can point to no case from any jurisdiction where a motion to suppress, a denial of motion to suppress was upheld where there was only a subjective conclusion of an officer with no objective facts. The case law requires articulable, concrete evidence in support of the probable cause determination, and there was not in this case. This court should reverse the denial of the motion to suppress. Turning now to the issue of drug quantity, the starting point of this issue is Sentencing Guideline 1B.1.3, which allows as relevant conduct all of defendant's criminal conduct, as well as all reasonably foreseeable acts and omissions of others in furtherance of jointly undertaking criminal activity. So under the guidelines, in order to be relevant conduct, the conduct must be criminal. Page is an extension of this basic principle. Page indicates that drugs obtained by a defendant from a co-conspirator are fairly countable as drugs that he reasonably thought were distributed by the conspiracy. That makes complete sense because in order for the defendant to obtain those drugs from the conspiracy, the drugs have to have been distributed. That was a criminal act, and so that's fairly countable against the defendant. The corollary of the Page rule is that where the drugs were legally obtained, they're not fairly countable as relevant conduct. The Fourth Circuit's decision in Bell clearly expressed this, or what was implicit in Page and what is in the guideline, and that is that if conduct is legal, it's not properly countable as relevant conduct for sentencing purposes. Bell, like in this case, dealt with Schedule II drugs, which can be legally obtained and consumed, and where the defendant is obtaining oxycodone pursuant to a valid prescription, and consuming it himself pursuant to a valid prescription, that is exactly what occurs. That is legal conduct inappropriate for consideration as relevant conduct of sentencing. The risk of- Is there any evidence put in by the government that McMahon and Tulloch conspired regarding the acquisition of pills in Florida? No. There is no evidence that Mr. McMahon was sending Mr. Tulloch down to Florida to obtain pills. That sets Mr. Tulloch apart from the other defendants in this conspiracy where there was that evidence that they were dispatched on the bankroll and orders of McMahon to obtain those drugs. Mr. Tulloch was a long-haul trucker that was going to Florida anyway and visited pain clinics in Florida on his regular route there, and only deep into that conduct did he start to actually buy drugs from Mr. McMahon as well. So his conduct is different from the other defendants in this conspiracy. The risk in this case is if this court allows every one of the 3,600 pills that Mr. Tulloch obtained pursuant to a valid prescription in Florida, in the face of the evidence that Mr. Tulloch took at least some of those pills himself, this court would be countenancing the use of this legal conduct as a sentencing factor against Mr. Tulloch, and that's not- No, Your Honor. It's the government's burden to show drug quantity in a disputed case, and it was clearly disputed in this case. But didn't he make some statement to the police regarding distribution? And if he has admitted that he was involved in distribution, does that somehow mean that he has the burden of persuasion on how many he distributed and how many he kept, or at least how many he kept for himself? There was a statement offered into evidence that Mr. Tulloch stated that he was selling some drugs. He also, in the same breath, said that he was taking some. And so that evidence, that statement where he indicated he was selling some, cannot fairly encompass all of the drugs because that very same statement said he was holding some. That's true. So I'm just wondering at that point, if he has conceded distribution, if the burden doesn't shift to him to show how many he kept for himself, for example. I would contend, Your Honor- Under Gill, the Gill case. I don't think that the burden would shift, Your Honor. The government bears the initial burden of showing how many pills were distributed, and there's no evidence of how many pills were distributed. The district court was taking one part of Mr. Tulloch's statement and using that to count every one of the 3,600 pills, where there's no basis for that leap that every one of the pills was being consumed. That was the point made by defense counsel at sentencing, that this was a vague statement with no indication of how many pills were sold each occasion and whether there was actually pills sold out of each prescription or not. It's too much of a leap, and the court never- I thought your client told the officers in an interview about- well, obviously they had to get information from somewhere- about his use of the prescription drugs from Florida, and so that was mentioned or referenced in the pre-sentence report. But as to- and the judge apparently claimed that he- or at least implied that he took that into account in attributing all the drugs to your client. But if there was going to be more specific information, it would seem that the burden would shift because your client would be the one who would have that information. So what would we do if you or your client were not forthcoming with that at or before the time of sentencing? Your Honor, the government cites the Richards case as an example of- and I cite the Richards case as an example of how the government can meet this burden without imposing on the defendant the terrible choice of whether to take a stand and testify at his own sentencing and risk the consequences of that. The government has the initial burden to show they were not medically necessary, and in the Richards case they brought forth medical testimony at a two-day sentencing hearing in order to establish that fact. And so if the government did that, then arguably at that point, once there's testimony in the record that none of these pills were medically necessary, at that point the burden would shift, I would argue, to Mr. Tulloch because there's actually evidence in the case- Well, your client would need to make an initial showing that he used the drugs medically and how many before anything would shift to the government. Otherwise they'd be chasing their tail about this whole issue. I disagree, Your Honor, and that's because the government bears the initial burden. And as the question is phrased, it assumes the defendant has the initial burden. Well, except for this exception where he's claiming personal use for medical reasons. Then we may want to have the initial burden with him. And maybe the law does need to be clarified on that in this circuit. I would argue that the burden should stay with the government as the initial burden, and that's simply because it's always the government's burden in a disputed drug quantity case to come forward with the evidence first. But in this case- But they have to know what they're rebutting. How are they going to know what they're rebutting unless your client has made an initial showing or an initial case as to what his claim is with respect to this particular exception? Otherwise, how do they know what it is that they're countering? That really is the problem. Well, in this case, Your Honor, there was evidence that he was going to contest the drug quantity. That was his statement, the second half of his statement that was offered against him. And there was evidence in the PSR that he was taking drugs. At that point, the government was fairly unnoticed that it's going to have to bring forth testimony to establish how much of these drugs he was taking. Did you mention just a few minutes ago that there were as many as 3,600 pills involved? I'm not sure that establishing that amount doesn't throw the burden on him. I mean, nobody takes 3,600 pills for their own use. If I may interject, Your Honor, it sounds like a large number, but this amount of drugs was obtained over a 20-month period, 180 pills per month. If you do the math on an average 30-day month, that would be six pills per day. And TBI agent Thompson testified in this case he's seen people take 10 or 15 pills per day with high tolerance. And so the fact that he may have been taking all six of those pills per day that he obtained is completely reasonable under the circumstances. Thank you. Thank you. Good morning. May it please the Court, Karen Hebbets on behalf of the United States. And I just want to address a couple of issues that counsel brought up. First, with regard to the traffic stop, Trooper Stelow testified that first that he had extensive history and experience in dealing with traffic stops. He said he wrote two to three warning tickets per week over the course of his career. He was unable, based on the length of time between the traffic stop and his appearance in the magistrate court, to give specific examples, and he explained that because there's not always a speed that's significant or a distance that's significant. It depends on road conditions. It depends on traffic conditions. It depends on how closely the car is to the car in front. His baseline objective is to say, can the car make a stop if the car in front makes a dynamic stop? And he testified that in this case it couldn't. But isn't that the problem, that he simply testified to a conclusion? But this type of traffic violation is very subjective. There's no objective way to categorize that necessarily. We're talking about probable cause. Is the standard going to be the police officer need only say I'm very experienced, I've seen this a lot, and I can tell you that that person was following too closely, or whatever other conclusion the police officer has drawn, and that's sufficient to carry your burden?  I think that Trooper Stelo testified very clearly in the suppression hearing that this car was following too closely. He said immediately upon seeing the car, and he was notified ahead of time that there was a van, a maroon van that he might keep an eye out for, his immediate conclusion was that car is too close to the car in front of him, or to the car in front of them. And that's, in this case, the court found, the magistrate court and the district court found that he was credible, that he was reliable, and there was no testimony offered to the contrary, that in fact he wasn't following too closely. But here's the problem. What was going to be the testimony to rebut it? The defendant getting on the stand and saying I wasn't following too closely? I mean, when you've got nothing concrete to say about it except he was following too closely, wow, he's following too closely. I don't see how you can put the burden on him to take the stand and rebut that. I mean, what can he say? Well, in that case, he could have. I mean, really the judge ruled based on the credibility of the trooper and his information and his experience in that day. As pointed out, if Mr. Tulloch was a long-haul driver and had lots of experience driving, he could have, in fact, testified that he wasn't, that in his opinion he wasn't following too closely, and then the court would have had to have made a determination based on credibility of each witness. But isn't that the problem is that we have two people swearing to something without any explanation or any items that we might call evidence? Your opposing counsel concedes that it's not a credibility issue. The question is the quantum of evidence. Right. And so I guess I would ask you again to help me with, let's ignore credibility. Let's say this officer is imminently credible. Did he put enough in the record to carry his burden? It would be nice if he had put some more stuff in there, but he was questioned on this, and he answered as truthfully as he could that a lot of time had passed and that he didn't have specific speeds that he could testify to. He just was basing it on his experience and his assessment of the situation. He didn't write a citation, is that right? He wrote a warning ticket only. That's correct. And what did the warning ticket say? It was a warning ticket for following too closely. But it didn't say what led to the conclusion that he was following too closely. No, it was just that it's basically, I think, a checkoff. Yep. And basically this court has to find that there was clear error on the part of the lower court when the United States admits that there wasn't in that case. With respect to the sentencing issue, I couldn't find any evidence in the record indicating a tie between McMahon and Tulloch in Tulloch's trips to Florida. Is that correct? That's correct. Mr. Tulloch was independently. He had known Mr. McMahon before. They had dealt in some marijuana before. He was not charged with that. He was independently taking trips to Florida to get pills, by his statement, to use and to sell.  And so Mr. Tulloch started purchasing when he needed more, purchasing pills for Mr. McMahon in the spring of 2010. And how can you count the Florida pills for the purpose of the sentence? As relevant conduct of Mr. Tulloch's pill distribution. If they were for his personal use, doesn't the law say otherwise? If they were for his personal use, but he gave a statement saying that he used some and he sold some, and there's no way for the United States or the court to know how many he used personally for a legitimate medical purpose and how many he distributed. Doesn't the burden begin with you to say the number distributed? And the United States put forth that information, and basically based on his statement that he stopped cold turkey as soon as he was arrested, and the fact that he didn't, I mean, he stopped going to Florida after he was interviewed by the police in October of 2010, and stopped obtaining pills, and didn't obtain them from anywhere else. And so the United States did put forth that as proof of his participation in the conspiracy in and as total number of pills that he was selling. It's given that, and this isn't in the record, but given the inherent addiction qualities of oxycodone pills, it's unlikely that somebody is using as many as six a day and then can just stop like that. So the United States did put forth the total quantity. There was no medical evidence provided. He did not state, here's my doctor, here's my diagnosis, here's why I need the pills. He said he had back trouble, back injury. Right, a back complaint, which was common for almost everyone else who was going to Florida. That's the reason they gave to the pain clinics down there is they had some kind of back injury, and that's why they needed the pills. And without any specific information for Mr. Tulloch, the United States was in a position to rely totally on the quantity that he admitted to going to Florida to get in order to distribute, and the court used that quantity. And this is distinguishable from the Bell case, which is cited by the defendant, for that very reason, that there were medical records submitted. There was documentation submitted showing that she had seen a doctor, she had a legitimate injury, and she needed some of the pills. And in this case, there was none of that. And so the United States feels that the sentence was appropriate in this case. Any other questions? All right. Apparently not. Thank you. Thank you. What's clear on the record is that the district court misapplied the Page case. Page does not apply under these circumstances. Obtaining drugs illegally from a pain clinic pursuant to a valid prescription is not obtaining drugs illegally from the conspiracy. On that basis alone, this court should remand. If then the issue becomes whose burden is it at that point, did the government meet its initial burden, and then the burden shifts to Mr. Tulloch? Does Mr. Tulloch have the initial burden? It should be dealt with on remand, and Mr. Tulloch should be given an opportunity to come forward, if that is the law in this circuit, that he should have an opportunity to meet that burden. With new evidence or remand on the evidence that existed at the time? Does everybody get a second bite of the apple? Everyone should have a second bite of the apple, if that's clearly the decision of this panel. Because under Page, these drugs could not have been counted as they were. So let the government attempt to meet its burden anew, and let Mr. Tulloch attempt to meet his burden, if you hold that the burden shifts. The government indicates that there's no way for the United States to know how many he took. The case law on the subject would indicate there's any number of possible avenues the government could take to prove that he wasn't taking the pills or how many he took. There's the evidence from the pain clinics themselves that would indicate how many pills that he was being prescribed and why, and there may be statements in those records as well that could be used. There's urine screens offered in some cases. Mr. Tulloch may have offered urine screens at his pain clinic appointments in Florida. We don't know. The government didn't get those records and put those records forward. And then there's no medical. They could offer medical testimony as to what is a medically necessary amount and across what line does it become abuse or not medically necessary, or make it implausible he was actually taking that amount. Maybe that amount that he allegedly took crosses some medical threshold where it's not possible that he actually took that amount. We don't know. Those are the types of evidence that the government could come forward with to meet its burden. Well, under Page, isn't it the case that the drugs that the defendant would have obtained from his supplier for personal use are counted against him and perhaps drugs that he obtained, say, from a physician or a pharmacy were not? There's that kind of distinction, and I don't know if you made that kind of objection that that sort of distinction should have been incorporated into the district judge's finding at the time of sentencing in this particular case. Did that come up at all? The first part of your question about Page not applying to a prescription drug, that's our reading of Page as well, that Page on its face would apply to illegal drugs obtained from the conspiracy, and that's because that act was a criminal act, distributing those drugs to the defendant. And the defendant did not cite Bell to the district court, but the defendant clearly objected to the notion that every one of these pills was taken for I'm sorry, was distributed and that objected to the lack of findings as to how many he took. All right. Thank you, Your Honor. By the way, before you leave your counsel table, Mr. West, the court would like to thank you for taking this case under the Criminal Justice Act. We know you do that as a service to the court, and I think that you've done a good job with the case this morning, so thank you very much.